Opinion by Justice Benavides
In this workers' compensation case, we decide whether appellees Flextronics America, LLC., Flextronics International Management Services, Ltd., and Thomas Alvin Shaw (collectively Flextronics, unless otherwise noted) were entitled to the exclusive remedy defense in a common law negligence action filed against it by an injured subcontracted employee, appellant Patrick Halferty. See TEX. LABOR CODE ANN. § 408.001(a) (West, Westlaw through 2017 1st C.S.). Because we conclude that Flextronics was not entitled to the exclusive remedy defense in this case, we reverse and remand.
I. BACKGROUND [1]
Flextronics entered into an agreement with Titan Datacom, Inc. (Titan), to perform various informational technology installs, layouts, designs, and network cablings at a Flextronics facility located in Austin. In the agreement between Flextronics and Titan, Titan agreed to "provide, pay for and maintain in full force and effect" workers' compensation insurance "in compliance with statutory limits in the respective state/country where work was being performed by Titan." Titan contracted with another entity known as Outsource, LLC (Outsource) to assist in installing networking cabling at the premises.[2] The parties do not dispute that Titan and Outsource complied with the workers' compensation provision of the agreement to cover all their employees on the project, including Halferty, who was an employee of Outsource.
In September 2013, Halferty was installing cable at the Flextronics facility. This installation required Halferty to climb to the top of a stepladder at Flextronics's facility. Halferty testified in his deposition that as he descended the ladder, he heard a "roll-up door" open near the stepladder which gave the ladder a "quick shove" that sent him over the ladder causing him to fall to the floor resulting in various personal injuries. The record shows that Shaw, a Flextronics employee, opened the door that pushed the ladder.
Halferty subsequently sued Flextronics for negligence and gross negligence alleging that Shaw, as a Flextronics employee, negligently opened the roll-up door causing *710 Halferty to "fall and sustain serious injuries."
In response, Flextronics filed a traditional and no-evidence motion for summary judgment. Regarding its traditional motion for summary judgment, Flextronics argued that it is entitled to the Texas Workers' Compensation Act's exclusive remedy defense, see id. , which would bar Halferty's claim against it, because as the general contractor, it served as Halferty's employer for purposes of the Texas Workers' Compensation Act. See id. §§ 406.123(a), (e) (West, Westlaw through 2017 1st C.S.). Regarding its no-evidence motion, Flextronics asserted that Halferty failed to show any evidence that Flextronics owed him a duty, breached that duty, or demonstrate how any breach of that duty was responsible for his injuries. The trial court granted Flextronics's traditional motion for summary judgment only, and this appeal followed.
II. FLEXTRONICS'S ENTITLEMENT TO THE EXCLUSIVE REMEDY DEFENSE
By his sole issue, Halferty asserts that the trial court erred by granting Flextronics's traditional motion for summary judgment because Flextronics failed to establish its entitlement to the exclusive remedy defense bar as a matter of law.
A. Standard of Review
We review the trial court's summary judgment de novo. Valence Op. Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Id.
The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. M.D. Anderson Hosp. & Tumor Inst. v. Willrich , 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing TEX. R. CIV. P. 166a(c) ). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. Id. Once the movant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. Walker v. Harris , 924 S.W.2d 375, 377 (Tex. 1996).
B. Applicable Law
The Texas Workers' Compensation Act outlines a process by which a general contractor qualifies for immunity from common-law tort claims brought by the employees of its subcontractors known as the "exclusive remedy" defense. Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 436 (Tex. 2009) ; see TEX. LABOR CODE ANN. § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.").
The first step of the process is that the general contractor and subcontractor must enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor. Entergy , 282 S.W.3d at 436 (citing TEX. LABOR CODE ANN. § 406.123(a) ). This agreement makes the general contractor a statutory employer of the subcontractor's employees for purpose of the workers' compensation laws. See id. (citing TEX. LABOR CODE ANN. § 406.123(e) ). As the statutory employer, the general contractor is entitled to immunity from common-law tort actions brought by the subcontractor's employees, and a covered *711 employee's exclusive remedy for work-related injuries is workers' compensation benefits. Id. (citing TEX. LABOR CODE ANN. § 408.001(a) ).
C. Discussion
Halferty argues that Flextronics is not entitled to summary judgment because it did not "provide" workers' compensation insurance coverage to Halferty that would entitle him to the exclusive remedy defense. In response, Flextronics disagrees and argues that Flextronics did provide coverage to Halferty pursuant to section 406.123(a) by its agreement with Titan. These arguments present the central question at issue in this appeal: under Texas Labor Code section 406.123(a), did Flextronics "provide" workers' compensation insurance to Halferty as an employee of Outsource?
1. HCBeck v. Rice
In support of their respective positions, both parties direct us to HCBeck, Ltd. v. Rice , 284 S.W.3d 349 (Tex. 2009). In HCBeck , FMR Texas Ltd. (FMR) contracted with HCBeck to construct an office campus on FMR's property. Id. at 350. The agreement provided that FMR would provide workers' compensation insurance through an owner-controlled insurance program (OCIP) at its own option and cost to FMR, HCBeck, subcontractors, and such other persons or interests as FMR may name as insured parties. Id. As a result, HCBeck and all subcontractors working on the project were required to enroll in the OCIP. Id. The agreement permitted FMR to terminate or modify the OCIP at any time, but if it did, an alternate insurance provision in the agreement required HCBeck to secure, at FMR's cost, other insurance covering itself and all subcontractors and employees at the same level as the workers' compensation coverage required in the OCIP. Id. at 351.
During the construction project, HCBeck entered into a subcontract with Haley Greer. Id. The subcontract recognized that the project was covered by FMR's OCIP and the subcontract incorporated the insurance provisions contained in FMR's original contract with HCBeck. Id. The subcontract required that Haley Greer apply for and enroll in FMR's OCIP. Id. Haley Greer complied by enrolling in the OCIP and a separate workers' compensation insurance policy was issued in Haley Greer's name. Id. Charles Rice, a Haley Greer employee, was injured while working on the construction project. Id. Rice made a claim and received workers' compensation benefits under the policy issued to Haley Greer under FMR's OCIP. Id. Rice subsequently sued HCBeck for negligence.
HCBeck moved for summary judgment claiming that its original contract with FMR specified that FMR's OCIP shall apply to all work at the project performed by HCBeck and subcontractors and, but for HCBeck's subcontract with Haley Greer, Rice would not be working on a project that contractually provided workers' compensation insurance covering Haley Greer's employees. Id. Rice argued that the subcontract between HCBeck and Haley Greer obligated Haley Greer-not HCBeck-to provide its own coverage if FMR terminated its OCIP. Id. Furthermore, Rice argued that since the workers' compensation insurance for Haley Greer's employees came at no cost to HCBeck, HCBeck did not "provide" insurance to entitle it to the exclusive remedy defense. Id.
After winning at the trial court and losing at the intermediate appellate court, HCBeck petitioned the Texas Supreme Court to determine whether through its contractual arrangements with FMR and Haley Greer, it "provided" insurance to *712 Haley Greer so as to qualify for immunity under the exclusive remedy defense. Id. The Texas Supreme Court held that HCBeck provided workers' compensation insurance under the Texas Workers' Compensation Act because: (1) the insurance plan incorporated into both its upstream contract with FMR and its downstream subcontract with Haley Greer included workers' compensation coverage to Haley Greer's employees; and (2) the contracts specify that HCBeck is ultimately responsible for obtaining alternate workers' compensation insurance in the event FMR terminated the OCIP. Id. at 351-52.
In analyzing the issue, the Texas Supreme Court highlighted that the contract documents contained an alternate insurance paragraph, which stated that HCBeck was specifically identified as the party that was contractually obligated to obtain the insurance to cover employees on the jobsite. Id. at 353. The court further held that HCBeck complied in all respects with the provision in the Texas Workers' Compensation Act that allows it to enter into a written agreement to provide workers' compensation insurance because that provision does not "require a general contractor to actually obtain the insurance, or even pay for it directly. [The Texas Workers' Compensation Act] only requires that there be a written agreement to provide workers' compensation insurance coverage." Id.
Based on the facts in that case, the Texas Supreme Court observed that the coverage that was actually provided to Haley Greer by FMR under the agreement "was backed by HCBeck's specific obligation assuring that Haley Greer remained covered in the event FMR decided to discontinue its OCIP." Id. at 354.
In summary, the Texas Supreme Court held that the exclusive remedy defense is available to a general contractor who, by use of a written agreement with the owner and subcontractors, provides workers' compensation insurance coverage to its subcontractors and subcontractors' employees. Id. at 360. Furthermore, the court held that the OCIP in that case, established and paid for by FMR pursuant to its contract with HCBeck, qualifies as "providing" workers' compensation insurance to subcontractors in a manner consistent with labor code section 406.123(a). Id. Furthermore, HCBeck, having "provided" the coverage to Haley Greer and its employees by the OCIP, and having otherwise satisfied the Texas Workers' Compensation Act's requirements to qualify as a statutory employer, was afforded the benefit of the exclusive remedy defense. Id.
2. Application of HCBeck
Turning to the facts of this case, we find HCBeck instructive, but distinguishable. First, we note that this case does not involve an OCIP. See id. at 351 (explaining that FMR's OCIP was incorporated into all construction contracts entered into by HCBeck and any subcontractors and paid for at FMR's option and cost). Nothing in the contracts between Flextronics and its subcontractors provides for an owner controlled insurance program, paid for by Flextronics, which provided workers' compensation insurance to all work on the Flextronics' project that was performed by Titan and subcontractors such as Outsource. In other words, the contracts at issue in this case do not incorporate workers' compensation coverage upstream and downstream like in HCBeck . See id. ("the insurance plan incorporated into both its upstream contract with FMR and its downstream subcontract with Haley Greer included workers' compensation coverage to Haley Greer's employees"). Instead, the downstream contract specifically obligated Titan to "provide, pay for and maintain in full force and effect" workers' compensation *713 insurance for their employees and "any and all subcontractors, or anyone directly or indirectly employed by any of them...." Stated another way, workers' compensation coverage began with Titan-not with Flextronics.
Second, we note that the contract at issue in this case does not place any onus on Flextronics to ensure that subcontracted employees, like Halferty, were covered as was the case in HCBeck . In concluding that HCBeck provided workers' compensation insurance under Texas Labor Code section 406.123(a) to entitle it to the exclusive remedy defense, the Texas Supreme Court highlighted the fact that the contract placed ultimate responsibility for obtaining alternate workers' compensation insurance in the event that FMR terminated the OCIP on HCBeck. See id. at 351-52. More specifically, the Texas Supreme Court noted that HCBeck acted "as guaranty to the policy premium" by the language in the contract that guaranteed that HCBeck would pay the premiums if the OCIP terminated to assure coverage remained by putting "something in the pot." Id. at 355. Here, Flextronics does not assure coverage remains in place by putting "something in the pot." Aside from the contractual mandate that Titan "provide, pay for and maintain" workers' compensation insurance, nothing else in the contract assures that coverage remains in place if the workers' compensation policies are terminated. The contract does, however, mandate that Titan furnish to Flextronics "true and correct copies of the certificates of insurance maintained in compliance with these insurance requirements" but requires nothing more. Based on these facts, we conclude that Flextronics did not "provide" workers' compensation coverage to Halferty as a subcontracted employee pursuant to section 406.123(a).[3]
3. Statutory Construction of "Provide"
Moreover, our conclusion today draws support not only from the case law, but also from the meaning of "provide" as contemplated by the Texas Workers' Compensation Act. The meaning of a statute is a legal question, which we review de novo to ascertain and give effect to the Legislature's intent. F.F.P. Op. Partners, L.P. v. Duenez , 237 S.W.3d 680, 683 (Tex. 2007). Where text is clear, text is determinative of that intent. State v. Shumake , 199 S.W.3d 279, 284 (Tex. 2006). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resorting to rules of construction or extrinsic aids. Id. We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction.
"Provide" is not statutorily defined under the Texas Workers' Compensation Act, so we apply it according to its common meaning. The common meaning of "provide" in this context is "to supply or make available." Provide , MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1996); see also Hunt Const. Group, Inc. v. Konecny , 290 S.W.3d 238, 245 (Tex. App.-Houston [1st Dist.] 2008, pet. denied) (adopting the same definition for "provide"); Funes v. Eldridge Elec. Co. , 270 S.W.3d 666, 671 (Tex. App.-San Antonio 2008, no pet.) (same). Therefore, by utilizing its common *714 meaning, we hold that Flextronics did not conclusively establish that it supplied or made available workers' compensation insurance coverage simply by requiring its subcontractors by written agreement to "provide, pay for and maintain" its own coverage. To the contrary, the language of this contract clearly removes Flextronics' obligation to "provide" workers' compensation insurance coverage entirely. See Hunt , 290 S.W.3d at 245 ; see also Valadez v. MEMC Pasadena, Inc. , No. 01-09-00778-CV, 2011 WL 743099, at *4 (Tex. App.-Houston [1st Dist.] Mar. 3, 2011, no pet.) (mem. op.) (holding that a general contract that "merely" requires a subcontractor to obtain workers' compensation does not constitute providing coverage within the meaning of the Texas Workers' Compensation Act that would entitle a general contractor to the exclusive remedy defense).
Further, we acknowledge that to "provide" does not equate to "purchase" and if the legislature intended "provide" to mean "purchase" it would have used "purchase" rather than "provide" or would have defined "provide" to mean "purchase" in the statute's definition. See Hunt , 290 S.W.3d at 245 ; see also Williams v. Brown & Root, Inc. , 947 S.W.2d 673, 678 (Tex. App.-Texarkana 1997, no pet.) ("when read closely, [the Texas Workers' Compensation Act] does not require the general contractor to 'pay' for the insurance"). It is undisputed that Flextronics did not pay for the workers' compensation insurance coverage in this case, nor were they necessarily required to purchase or pay for workers' compensation insurance to seek immunity under the exclusive remedy defense. See Hunt , 290 S.W.3d at 245. However, to seek the exclusive remedy defense, section 406.123(a) requires a general contractor to do something more than simply passing the onus of obtaining coverage to the subcontractor. For example, the contract between Flextronics and its subcontractors could have provided for an alternate insurance plan like the one found in HCBeck in which Flextronics would provide coverage in the event that its subcontractors failed to obtain insurance, see HCBeck , 284 S.W.3d at 353 ; or, Flextronics could have built enforcement mechanisms into its contract with subcontractors-such as withholding payment, or deducting insurance premium costs-that would trigger in the event that the subcontractors failed to provide coverage to its employees.
4. Summary
In summary, based on the record in this case, we conclude that Flextronics is not entitled as a matter of law to the protections and benefits of the exclusive remedy defense because it did not provide workers' compensation benefits to Halferty. See TEX. LABOR CODE ANN. § 406.123(a) ; 408.001(a); HCBeck , 284 S.W.3d at 349-54.
We sustain Halferty's sole issue.
III. CONCLUSION
We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

This cause was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. See Tex. Gov't Code Ann. § 73.001 (West, Westlaw through 2017 1st C.S.).

The record is devoid of any written agreement between Titan and Outsource.

While the record shows that Halferty received benefits from Outsource's workers' compensation insurance provider due to his injuries, consideration of such evidence is irrelevant to decide the ultimate legal question currently before us today-that is, whether Flextronics was an "employer" under Texas Labor Code section 406.123(a) to entitle Flextronics to immunity under the exclusive remedy defense. See Tex. Labor Code Ann. § 406.123(a) ; 408.001 (West, Westlaw through 2017 1st C.S.).