

## NUMBER 13-18-00209-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

RICHARD POWELL,                                                          Appellant,

v.

VALERO ENERGY CORPORATION
AND VALERO REFINING – TEXAS, L.P.,                                       Appellees.

**On appeal from the 319th District Court
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant Richard Powell appeals the trial court's summary judgment dismissing

his premises liability and negligence claims against appellees Valero Energy Corporation

and Valero Refining—Texas, L.P. (VEC and VRT respectively).   By three issues, which

we treat as two, Powell argues that the trial court erred in granting summary judgment

because: (1) VRT is not entitled to the Texas Workers' Compensation Act's (the TWCA) exclusive remedy defense, *see* TEX. LAB. CODE ANN. § 408.001(a) (West, Westlaw through 2017 1st C.S.); and (2) VEC's evidence does not negate the duty element of Powell's claims. We affirm.

## I. BACKGROUND

VRT contracted with Qualspec, Inc. (Qualspec) to perform inspection work at its Bill Greehey refinery (the Refinery) in Corpus Christi, Texas. The parties' contractual relationship was governed by a multi-site work agreement (the Agreement). With respect to the provision of workers' compensation insurance, the agreement provided as follows:

9. Insurance

a. Non-ROCIP.

Unless [Qualspec] has been (or will be, prior to commencing the Work) enrolled in Valero's Rolling Owner Controlled Insurance Program ("ROCIP"), [Qualspec] shall maintain at all times over the term of this Agreement the insurance coverages described in Exhibit D, Minimum Insurance Requirements, with limits and coverages not less than those specified therein.

The insurance required by this section 9.a. shall be maintained by [Qualspec] at its own expense at all times during the term of this Agreement.

. . . .

b. ROCIP.

As part of the material consideration for [VRT's] agreement to enter into this Agreement, [Qualspec] has agreed to participate in the ROCIP program whenever it is available and applicable to any Work, and when Valero has requested that

2

[Qualspec] so participate. To the extent that [Qualspec] participates in ROCIP, [Qualspec] agrees that it will discount its pricing for the Work as appropriate to reflect its insurance savings.

An exhibit to the Agreement further provided that the ROCIP covers "the workers' compensation losses associated with on site exposures" and "covers enrolled Contractors and Subcontractors of all tiers[.]" Pursuant to section 9.b. of the Agreement, VRT elected to provide workers' compensation coverage to Qualspec and its employees through the ROCIP. Thereafter, Powell, a Qualspec employee, was injured while working as an inspector at the refinery. Powell does not dispute that he received benefits under the workers' compensation policy provided by VRT.

Powell sued VRT and VEC, alleging causes of action for negligence and premises liability. VRT and VEC filed a combined traditional motion for summary judgment supported by the following evidence: (1) the Agreement; (2) the applicable workers' compensation policy; (3) employee affidavits; and (4) an amendment to the Agreement recognizing that Altech Inspections, Inc. had changed its legal name to Qualspec Inc.

VRT sought summary judgment on the basis of the TWCA's exclusive remedy defense. *See id.* VRT argued that it qualified as Powell's statutory employer under the TWCA because it entered into a written agreement to provide workers' compensation coverage to Qualspec and its employees.

VEC, on the other hand, argued that it owed no duty to Powell because it did not own or operate the premises where Powell was injured. VEC relied on the affidavit testimony of Ethan A. Jones, an employee of Valero Services, Inc., a subsidiary of VEC. Jones testified that VEC is a holding company that has no employees, sells no goods or

3

services, and owns or leases no real property.   Jones averred that VEC did not own any interest in the Refinery and that it had no employees present at the Refinery.   Jones testified that VRT owns, operates, and controls the Refinery.

Powell filed a response to VRT and VEC's motion for summary judgment, supported by answers to interrogatories and an evidentiary affidavit.   Powell argued that VRT failed to present evidence of a written agreement to provide workers' compensation coverage.   With respect to VEC, Powell noted that the applicable insurance policy listed VEC as a project sponsor.   Powell maintained that this constituted evidence that VEC exercised control over the Refinery.

The trial court entered summary judgment in favor of the Valero entities and dismissed Powell's causes of action.   This appeal followed.

## II.   STANDARD OF REVIEW

We review a grant of summary judgment de novo.   *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).   In conducting our review, we view the evidence in the light most favorable to the nonmovant and make all reasonable inferences and resolve all doubts in the nonmovant's favor. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

In a traditional summary-judgment motion, a movant must state specific grounds, and a defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment.   *Nall*, 404 S.W.3d at 555 (citing TEX. R. CIV. P. 166a(c)).   An issue is conclusively established "if reasonable minds could not differ about the conclusion to

4

be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### III. EXCLUSIVE REMEDY DEFENSE

By his first issue, Powell argues that VRT failed to establish its exclusive remedy defense "because it did not provide workers' compensation insurance coverage for Qualspec employees like Powell."

### A. Applicable Law

The TWCA was intended to benefit employees and employers. *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012).

> The [TWCA] was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. . . . The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job. . . . In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, and for personal injuries sustained in the course and scope of his employment.

*Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003) (quoting *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 206–07 (Tex. 2000) (citations omitted)). "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee." TEX. LAB. CODE ANN. § 408.001(a). The TWCA recognizes that a general contractor may procure workers' compensation coverage for subcontractors and subcontractors' employees. *Alvarado*,

5

111 S.W.3d at 141. A general contractor is deemed the employer of a subcontractor and the subcontractor's employees if the general contractor provides, in accordance with a written agreement, workers' compensation insurance coverage to the subcontractor and its employees. TEX. LAB. CODE ANN. § 406.123 (West, Westlaw through 2017 1st C.S.); *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 353 (Tex. 2009). The TWCA's "deemed employer/employee relationship extends throughout all tiers of subcontractors." *Etie v. Walsh & Albert Co.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Furthermore, a premises owner, such as VRT, may be a general contractor for purposes of the TWCA. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 440, 444–45 (Tex. 2009). (holding that a premises owner who "wears the hat of a general contractor" who subscribes to workers' compensation coverage under TWCA and enters into written agreement to provide coverage to all contractors and contractors' employees at its work site is entitled to assert the "exclusive remedy defense").

Courts construe the TWCA liberally in favor of coverage as a means of affording employees the protections the Texas Legislature intended. *See Casados*, 358 S.W.3d at 241. The TWCA has a "decided bias" for coverage and courts interpret the statute in a way that favors blanket coverage to all workers on a site. *See HCBeck*, 284 S.W.3d at 359; *Summers*, 282 S.W.3d at 451; *Alvarado*, 111 S.W.3d at 140.

## B.    Analysis

The parties' arguments focus on what it means to "provide" workers' compensation insurance as that term is used in section 406.123 of the labor code. *See* TEX. LAB. CODE ANN. § 406.123. It is undisputed that VRT secured workers' compensation coverage for

Qualspec pursuant to its ROCIP[1] program as contemplated by section 9.b. of the Agreement. Nevertheless, Powell maintains that, because VRT could have required Qualspec to procure its own coverage, VRT did not agree to "provide" coverage. In particular, Powell notes that VRT agreed to provide coverage through the ROCIP only when "it is available and applicable" to a particular project. Powell further argues that Qualspec, not VRT, provides coverage under the Agreement because Qualspec is required to discount its pricing for the project to reflect its insurance savings.

In determining whether VRT provided coverage by written agreement, we look to the common meaning of "provide." *Halferty v. Flextronics Am., LLC,* 545 S.W.3d 708, 713 (Tex. App.—Corpus Christi 2018, pet. filed). "Provide" as it is used in the context of section 406.123(a) of the labor code means "to supply or make available." MERRIAM WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 948 (1990); *see Flextronics*, 545 S.W.3d at 713. We have previously held that a general contractor does not provide coverage simply by requiring its subcontractors to secure their own coverage. *Flextronics*, 545 S.W.3d at 714. Rather, the general contractor must do something more than pass the onus of obtaining coverage to the subcontractor. *Id*. It must assure coverage by putting "something in the pot." *Id*. at 713. VRT required Qualspec to participate in its ROCIP on qualifying projects, and with respect to Powell, it provided workers' compensation

---

[1] An owner controlled insurance program, or OCIP, is designed to secure insurance, including workers' compensation insurance, at a reasonable price for all workers at a job site or construction site. *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 70 n.7 (Tex. 2016) (citing *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 359–60 & n. 6 (Tex. 2009)). OCIPs provide many benefits, including "allow[ing] the highest-tiered entity to ensure quality and uninterrupted coverage to the lowest-tiered employees." *Id*. (quoting *HCBeck*, 284 S.W.3d at 359).

coverage through the ROCIP. As such, VRT has done more than simply pass the onus of obtaining coverage to a subcontractor.

VRT's agreement to provide coverage is similar in many respects to the agreement addressed by the Texas Supreme Court in *Summers*. 282 S.W.3d 433. In that case, Entergy contracted with IMC to perform maintenance at its facilities. *Id*. at 435–36. By written agreement, Entergy agreed to provide workers' compensation insurance for IMC's employees in exchange for IMC's lower contract price. *Id*. at 436. John Summers, an IMC employee, was injured while working at an Entergy site. *Id*. Summers applied for, and received, benefits under the workers' compensation policy purchased by Entergy. *Id*. Interpreting the TWCA's applicable definition, the Court held that Entergy qualified as a general contractor under the TWCA, and, as such, it was entitled to the exclusive remedy defense because it provided workers' compensation by written agreement. *Id*. at 437–38.

Like the premises owner in *Summers*, VRT, acting as its own general contractor, secured workers' compensation coverage for its subcontractor by written agreement. Also, like *Summers*, the injured employee received benefits under the workers' compensation policy provided by VRT. Accordingly, we conclude that VRT "provided" coverage as contemplated by the TWCA.

We are unpersuaded by Powell's arguments to the contrary. First, Powell maintains that the Agreement allows VRT to choose if it provides coverage through the ROCIP, but the Agreement imposes no obligation for VRT to provide coverage. The Agreement, which covered multiple sites, allows that certain "Work" may not qualify for

8

coverage through the ROCIP. However, in determining whether VRT has "provided" coverage under the TWCA, it is of no consequence that coverage might not have been made available for other services. Rather, "we look at what did happen, not what might happen." *HCBeck*, 284 S.W.3d at 359 n.4. In this instance, however, VRT determined that Qualspec's inspection services at the Refinery was qualifying "Work," and it required Qualspec to enroll in its ROCIP. As a result, Powell received compensation under the applicable policy for his injuries. Extending the exclusive remedy defense to VRT under such circumstances is consistent with the TWCA's "decided bias" for coverage. *See id.* at 359; *Summers*, 282 S.W.3d at 451; *Alvarado*, 111 S.W.3d at 140. In that regard, several courts have extended the exclusive remedy defense to multi-tier coverage arrangements similar to the subject agreement. *See HCBeck*, 284 S.W.3d at 359 n.4 (explaining that the fact that the premises owner "was not contractually bound to continue the OCIP" did not preclude statutory employer status for general contractor); *Etie*, 135 S.W.3d at 765 (holding that a general contractor was a statutory employer where it exercised its option to provide workers' compensation coverage); *see also Cook v. White Const. Co.*, No. 03-10-00114-CV, 2011 WL 3371542, at *4 (Tex. App.—Austin Aug. 4, 2011, no pet.) (mem. op.) (concluding that the general contractor was a statutory employer where the premises owner could have discontinued the OCIP coverage but did not); *Lazo v. Exxon Mobil Corp.*, No. 14-06-00644-CV, 2009 WL 1311801, at *2 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.) (holding that the premises owner was a statutory employer where agreement stated that premises owner *could* provide OCIP coverage and it did so).

9

In addition, the fact that Qualspec agreed to work for a discounted rate in exchange for coverage does not equate to Qualspec having provided its own coverage. *See HCBeck*, 284 S.W.3d at 361 (concluding that a general contractor was a statutory employer where it provided coverage through owner's OCIP but subcontractors "adjusted [their] individual contract price[s] to reflect the premiums [owner] paid for the coverage"); *Summers*, 282 S.W.3d at 435–36 (concluding that premises owner provided coverage where it agreed to do so in exchange for a lower contract price); *Becon Const. Co. v. Alonso*, 444 S.W.3d 824, 831 (Tex. App.—Beaumont 2014, pet. denied) (holding that a general contractor was a statutory employer where it provided coverage through its own OCIP but subcontractors "effectively purchased the coverage" by "adjusting the prices they charged for their work").

We hold that VRT conclusively established its entitlement to the exclusive remedy defense. *See Nall*, 404 S.W.3d at 555. Accordingly, the trial court did not err in granting summary judgment in favor of VRT. We overrule Powell's first issue.

## IV. DUTY

By its second issue, Powell argues that VEC failed to conclusively negate the duty element of Powell's claims. Both parties agree that the existence of a duty hinges on whether VEC's evidence conclusively established that it did not have the right to control the Refinery.

### A. Applicable Law

Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211,

217 (Tex. 2008).  Whether a duty exists is a threshold inquiry in premises liability case and a question of law for the court.  *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 592 (Tex. App.—Fort Worth 2008, pet. denied).

Duty in the context of premises liability is "commensurate with the right of control." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53–54 (Tex. 1997); *La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 522 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) ("The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it.").  A party in control of a premises "is under the same duty as the owner to keep the premises . . . in safe condition."  *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986); *see La China*, 417 S.W.3d at 522.  Control can be demonstrated by ownership, occupation, management, or possession of property.  *Lefmark Mgmt. Co.*, 946 S.W.2d at 54; *see De Leon v. Creely*, 972 S.W.2d 808, 812 (Tex. App.—Corpus Christi 1998, no pet.) (explaining that control requires physical control of the property or the intention to occupy or possess the property).  The elements of control can be proven by a contractual agreement assigning a right to control or evidence of actual control.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *La China*, 417 S.W.3d at 522.

**B.    Analysis**

VEC's summary judgment affidavit established that VEC:   (1) is strictly a holding company; (2) has no employees, sells no goods or services, and owns or leases no real property; (3) does not own or operate any plants in Corpus Christi, Texas, including the

11

Refinery at issue; and (4) does not have any employees present at the Refinery. The affidavit further provides that VRT, not VEC, owns, operates, and controls the Refinery. Powell offered no controverting evidence regarding these facts.

Powell maintains that the affidavit fails to negate duty because it does not specifically provide that VEC lacked the right to control the Refinery. However, one could easily infer this fact from language used in the affidavit. *See La China*, 417 S.W.3d at 523 (concluding that an affidavit which provided that defendants were not owners, lessors, lessees, or managers of a premises and had no employees at the premises was sufficient to establish the lack of a duty owed to the plaintiff despite not using the words control or occupy); *Gunn v. Harris Methodist Affiliated Hosps.*, 887 S.W.2d 248, 251 (Tex. App.—Fort Worth 1994, writ denied) (concluding that an affidavit providing that defendant did not own, maintain, or operate premises where plaintiff was injured was sufficient to establish a lack of duty). Therefore, we conclude that VEC's summary judgment affidavit adequately demonstrated that it did not have the right to control the Refinery.

Next, Powell argues that there exists a fact issue concerning VEC's right to control the premises because VEC was listed as the project sponsor of the ROCIP. While this evidence may speak to some measure of operational control by VEC over its subsidiary VRT, it does not constitute evidence that VEC had the right to control the Refinery where Powell was injured. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) ("[I]n a case alleging negligence in maintaining a safe workplace, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations."); *Coastal Corp. v. Torres*, 133 S.W.3d 776,

12

779 (Tex. App.—Corpus Christi 2004, pet. denied) (explaining that a right of control over operations of a subsidiary in general is not sufficient to hold a parent corporation liable for torts of the subsidiary).

We conclude that VEC conclusively negated an essential element of Powell's claims. *See Nall*, 404 S.W.3d at 555. Therefore, the trial court did not err in granting VEC's motion for summary judgment. We overrule Powell's second issue.

## V. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed the
28th day of February, 2019.