**Affirmed and Memorandum Opinion filed January 25, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00177-CV

---

### JUAN REYES, Appellant

### V.

### THE LUBRIZOL CORPORATION, Appellee

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-10029**

---

### MEMORANDUM OPINION

This is an appeal from a final order[1] granting appellee's, The Lubrizol Corporation's, motion for summary judgment based on the "Exclusive Remedy"

---

[1] There is no magic language (a Mother Hubbard clause is used), but the order actually disposes of every pending claim and party, "all claims are hereby dismissed with prejudice." See *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). Therefore, under *Lehmann*, the judgment is final.

provision of the Texas Workers' Compensation Act, (the "Act" or "TWCA").[2] Appellant Juan Reyes argues that the trial court erred because, by the terms of his employer's agreement with Lubrizol, Lubrizol is not a "general contractor" under the Act and therefore should not reap the benefits of the statutory bar to liability provided under section 406.123 of the Texas Labor Code. In the alternative, Reyes argues that the terms of his employer's agreement with Lubrizol are ambiguous, and likewise render a genuine issue of material fact as to Lubrizol's status as a "general contractor" under the Act. Based on our review of the record, we affirm the trial court's summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Reyes's live petition, on February 27, 2017, Reyes was employed by S&B Engineers and Constructors, LTD (S&B) as a welder at a Deer Park facility owned and operated by Lubrizol. Reyes alleges that he was injured as a result of two Lubrizol employees negligently crashing a railcar into an automobile that Reyes was driving. Reyes asserts that Lubrizol was vicariously liable for the acts of the railcar operators under the theory of *respondeat superior* and independently liable for its hiring of the railcar operators.

Lubrizol moved for summary judgment on its exclusive-remedy affirmative defense under the Act. In its motion, Lubrizol asserted that S&B was contracted by Lubrizol to perform various services at its facility and that Lubrizol agreed to provide workers' compensation insurance as a "general contractor" under Texas law. Lubrizol attached to its motion a Service Agreement between Lubrizol and S&B, which though substantially redacted in parts, sets out an arrangement

---

[2] Tex. Lab. Code Ann. § 408.001(a). This provision is sometimes referred to as the "Exclusivity Defense" or "exclusive remedy defense", we referred it to here as the "exclusive-remedy defense" and "exclusive-remedy affirmative defense".

between the two parties for the provision of Workers' Compensation Insurance for employees. In a section entitled "Insurance", the parties agreed that:

(1) S&B shall "purchase and maintain" insurance, including Workers' Compensation Insurance in compliance with Texas law for the benefit of each "[S&B] employee who is assigned to perform Services at the Premises;"

(2) S&B shall furnish a certificate of insurance showing that it is in compliance with the Act;

(3) S&B shall invoice Lubrizol, and Lubrizol shall pay S&B "the cost of the workers' compensation insurance purchased and maintained by S&B;" and

(4) Lubrizol shall be considered the employer of S&B's employees "for the sole purpose of the workers' compensation laws."

Lubrizol's summary judgment proof also included two affidavits. Deborah Peres, a Lubrizol representative, testified that Lubrizol reimbursed S&B weekly for the cost of the workers' compensation coverage. Kenneth Miller, an S&B representative, testified to the authenticity of records which generally confirm facts alleged in Reyes's petition—that at the time of the alleged injury Reyes was an S&B employee working as a welder at a Lubrizol facility.

Reyes filed a response to Lubrizol's summary-judgment motion arguing that the language of the Service Agreement does not characterize Lubrizol as a "general contractor", and that it only characterized S&B as a general contractor. Reyes acknowledged that a premise owner may qualify as a "general contractor" where it undertakes to procure the performance of work or a service, either separately or through the use of subcontractors, but argued that by the terms of the Service

3

Agreement, that did not occur.  Reyes contended:

> There is nothing about the language of the agreement that indicates that Defendant will do anything whatsoever regarding the subcontractors or the contractors activities; this of course indicates that Defendant was not intended by way of the language of the Services Agreement to act as the general contractor but rather only S&B was to act as the general contractor.

Reyes also argued, in the alternative, that the Service Agreement is ambiguous and raises a fact question on Lubrizol's status as a "general contractor".  Reyes did not contest or supplement the factual record with additional evidence, but rather challenges the interpretation of the agreement between S&B and Lubrizol.

On December 10, 2019, the trial court granted Lubrizol's summary-judgment motion.  On January 9, 2020, Reyes moved for new trial, spurring a volley of filings (i.e., response, reply, sur-reply).  During this second, post-judgment round, the parties shifted their focus to the question whether the Service Agreement between S&B and Lubrizol provided for workers' compensation coverage.  On February 12, 2020, in an order titled, "Order Granting Motion for Summary Judgment Regarding Application of Texas Workers' Compensation Exclusive Remedy Provision" the court, without any further reference to the summary-judgment motion, unequivocally denied "Plaintiff's Motion for New Trial".  Reyes then filed his notice of appeal.

## II. ISSUES AND ANALYSIS

The question Reyes presents by this appeal is in essence whether Lubrizol's summary judgment proof showed that it executed the necessary paperwork to establish that it was entitled to the exclusive-remedy defense as a statutory "general contractor".  Because the exclusive-remedy defense is an affirmative defense, Lubrizol had the burden to establish conclusively its entitlement to

4

judgment by the relevant statutory provisions. *See Lazo v. Exxon Mobil Corp.*, 14-06-00644-CV, 2009 WL 1311801, at \*1 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.). (providing that a defendant moving for summary judgment on an affirmative defense must prove conclusively the defense's elements).

## A. Standard of Review

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting the notion for summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). A defendant moving for summary judgment on an affirmative defense must prove conclusively the elements of the defense. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001).

## B. Exclusive-Remedy Defense for Subscribing Employers and Others

The TWCA was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. *Hughes Wood Prods.*

*v. Wagner*, 18 S.W.3d 202, 206 (Tex. 2000). An employer has the option of providing workers' compensation insurance for employees and becoming a subscriber under the TWCA, or not providing workers' compensation insurance and remaining a nonsubscriber. Tex. Lab. Code Ann. § 406.002(a); *Port Elevator–Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012).

If the employer is a subscriber, the TWCA allows employees to recover workers' compensation benefits for injuries in the course and scope of employment without proving fault by the employer and without regard to their negligence or that of their coworkers. *Id.* In exchange, the TWCA prohibits an employee from seeking common-law remedies from his employer for personal injuries sustained in the course and scope of his employment. *Hughes Wood Prods.*, 18 S.W.3d at 207. "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage." Tex. Lab. Code Ann. § 408.001(a).

In the typical case, to show that a common-law claim is barred by the TWCA, the employer must show that the injured worker was its employee at the time of the work-related injury, and covered by workers' compensation insurance. *Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 187 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). This is not the typical case.

Today's case involves the nuanced but not uncommon situation where a non-employer secures by written agreement workers' compensation employer's status over the employees of others. *See* Tex. Lab. Code Ann. 406.123(e). These circumstances direct our consideration to the provisions under Subchapter F of Chapter 406, "Coverage for Certain Independent Contractors." The operative provisions are found in section 406.123 of the Labor Code, which provides:

(a) A general contractor and a subcontractor may enter into a written

6

agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

....

(e) An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

Tex. Lab. Code Ann. § 406.123(a), (e).

Thus, by the terms of the TWCA, the exclusive-remedy defense provided to subscribing employers is also available to a "general contractor" if, pursuant to a written agreement, it "provides" workers' compensation insurance coverage to the "subcontractor" and its employees. *HCBeck, Ltd., v. Rice*, 284 S.W.3d 349, 350 (2009) (citing Tex. Lab. Code Ann. §§ 406.123(a), 408.001(a)). If the general contractor "provides" workers' compensation insurance, it becomes a statutory employer of the subcontractor's employees. *Id.* at 352 (citing Tex. Lab. Code Ann. § 406.123(e)).

Parties executing such written agreements with the aim of sharing coverage must observe the defined terms under the subchapter. Under the subchapter, "General contractor" means

a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors. The term includes a "principal contractor," "original contractor," "prime contractor," or other analogous term. The term does not include a motor carrier that provides a transportation service through the use of an owner operator.

Tex. Lab. Code Ann. § 406.121.

In *Entergy Gulf States, Inc. v. Summers*, the Court considered the question of whether, as here, a premises owner can be considered a general contractor and thus become a statutory employer of an injured worker employed by a contractor of the

premises owner. The Court concluded that a premises owner may fall within this "general contractor" definition, as one who "undertakes to procure the performance of work." 282 S.W.3d 433, 444 (Tex. 2009); *See also Lazo v. Exxon Mobil Corp.*, 14-06-00644-CV, 2009 WL 1311801, at *3 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.). The corresponding term "subcontractor" means "a person who contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform." Tex. Lab. Code Ann. § 406.121(5).[3] The crux of Reyes's complaints revolves around these terms.

**C. Did the court err in its implicit conclusion that Lubrizol conclusively established each element of its exclusive-remedy defense?**

To prevail on summary judgment and establish its entitlement to the exclusive remedy under subchapter F, Lubrizol had to prove conclusively that it fell within the statutory definition of a "general contractor", that S&B fell within the statutory definition of a "subcontractor", and that Lubrizol "provided" workers' compensation insurance coverage to S&B and its employees pursuant to a written agreement. *See HCBeck, Ltd.*, 284 S.W.3d at 352. While addressing this issue, we also address Reyes's alternative argument that ambiguity in the written agreements creates a "fact question as to whether the intent was *either* for Lubrizol to act as the general contractor *or* for S&B to act as the general contractor.

Most of the facts relevant to our consideration of Lubrizol's affirmative

---

[3] Another provision under the subtitle, section 406.122(a) deems all persons providing work or services for a general contractor to be employees of the general contractor except for independent contractors and their employees. Section 406.122(b), on the other hand, affirmatively excludes subcontractors and their employees as the general contractor's employees if the subcontractor is acting as an independent contractor and "has entered into a written agreement with the general contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work." Thus, if section 406.122(b) applies, absent a written agreement under section 406.123, there is no employer-employee relationship between a general contractor and a subcontractor for workers' compensation purposes and no reciprocity of protection.

defense are undisputed. Reyes does not dispute the evidence that: (1) Reyes was employed by S&B and (2) under the Services Agreement S&B will purchase workers' compensation insurance for its employees and Lubrizol will reimburse S&B for doing so, or (3) S&B purchased insurance and was reimbursed by Lubrizol. Reyes instead argues that the Service Agreement "does not conclusively establish that Lubrizol was the 'general contractor' as that term is defined by section 406.123 of the TWCA." In connection with this argument, Reyes also argues that the agreements do not reflect an intent that S&B is a "subcontractor."

As a starting point, we note that throughout the Service Agreement, including section 15 of the Service Agreement entitled "Insurance," the parties refer to S&B by the defined name "Contractor" and refer to The Lubrizol Corporation as "LZA" or as "Lubrizol". The Service Agreement does not specifically identify any party as a "general contractor." In section 2, entitled "Services" the Service Agreement states that "Lubrizol retains Contractor as an independent contractor to perform the Services." The agreement also refers to other "independent contractors" that Lubrizol has retained on the site, (e.g., "Lubrizol will similarly request its other independent contractors not to interfere with Contractor's operations").

Throughout the agreement, the term "subcontractor" is not used to describe "S&B", but rather potential subcontrators of S&B for whom S&B would be responsible, e.g., "Subject to the limitations stated herein, all damages, losses, costs and expenses arising out of incurred in connection with, related to or resulting from Contractor's or **Contractor's subcontractors'** breach or default of any provision in this Agreement will become indebtedness of Contractor to Lubrizol payable upon demand.")

We consider the contractual provisions together in order to ascertain the true

9

intentions of the parties as expressed in the writing itself. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) (holding that courts must "consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless"). The Service Agreement is not ambiguous. It plainly establishes that Lubrizol undertook to procure the performance of work or a service from S&B and contemplates that Lubrizol has procured and may further procure the performance of work from other contractors. The arrangement described in the Service Agreement plainly satisfies the statutory definitions, such that Lubrizol is one "who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors" (i.e. a statutory "general contractor") and that S&B is a person contracting with a Lubrizol to perform all or part of the work or services that the general contractor has undertaken to perform (i.e., a statutory "subcontractor" to Lubrizol). Contrary to Reyes's arguments, the parties' own use of the words "contractor", "independent contractor", and "subcontractor" does not necessarily define their status under the TWCA. Rather, to reach our conclusion, we have first looked to the statutory terms and their respective definitions, then to the summary-judgment evidence, including the text of the contract, to then determine if the relationships and contractual goals of the agreement fall within terms as defined.

Reyes only generally addresses the section 406.123(a) requirement that Lubrizol show that it has *provided* workers' compensation in its written agreement with S&B by reference to the first issue, stating that "Lubrizol is not a general contractor and *therefore* cannot qualify as "the employer" under the TWCA so as to have "provided" workers' compensation insurance to a subcontractor and its employees pursuant to a written agreement." In support of this contention, but without further explanation Reyes cites the Corpus Christi case

10

*Halferty v. Flextronics Am., LLC*. 545 S.W.3d 708, 713 (Tex. App.—Corpus Christi-Edinburg 2018, pet. denied).

*Halferty* is not precisely on point. In *Halferty*, the Corpus Christi-Edinburg court considered whether a premise owner, Flextronics, had *provided* workers' compensation to Halferty, an employee of a subcontractor on site. Though Flextronics had entered an agreement with another entity (Titan) that required Titan to "provide, pay for and maintain in full force and effect" workers' compensation insurance" where the work was being done, Flextronic itself had not done anything other than pass the obligation to obtain workers' compensation insurance to Titan. Flextronic did not agree to reimburse Titan for the coverage. The Court concluded that Flextronic did not *provide* coverage simply by requiring its subcontractors to secure their own coverage. *Id.* at 714.

In surveying the relevant case law, we find our decision in *Brooks v. Goodyear Tire & Rubber Co.* more germane to the current analysis. 14-12-01048-CV, 2013 WL 3477288 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.). In *Brooks*, we affirmed the trial court's summary judgment dismissal of Goodyear based on its entitlement to the exclusive-remedy defense by operation of a "general contractor's" written agreement pursuant to section 406.123. *Id.* at *4. Brooks, an employee of Qualitech Maintenance, Inc, filed suit against Goodyear when one of its employees ran over Brooks while operating a "4–wheeler all terrain . . .on the premises of the Goodyear plant." *Id.* at *1. Goodyear offered evidence of a "Services Agreement" between Goodyear and Qualitech that required that Goodyear provide reimbursement of workers' compensation insurance to Qualitech for employees working on its site, and evidence that Goodyear made such payments. *Id.* We concluded that the facts of the case were analogous to the *HCBeck, Ltd.* decision. *Id.* at *4. Today, we are confronted with facts strikingly

11

similar to those in *Brooks*.  Like Goodyear's summary-judgment proof in *Brooks*, Lubrizol's summary-judgment evidence establishes that:

- Lubrizol had a written contract that provided for workers' compensation insurance for S&B employees.
- Reyes was an S&B employee.
- S&B purchased workers' compensation coverage for its employees, including S&B.

And by contrast to *Halferty*, but similar to *Brooks*, the summary-judgment evidence in this case conclusively establishes that the general contractor (Lubrizol) was contractually obligated to reimburse the subcontractor (S&B) for the workers' compensation premiums and complied with that contractual obligation.

Because there is no genuine issue of material fact on any element of Lubrizol's exclusive-remedy defense, the trial court did not err in granting Lubrizol's motion for summary judgment.

### III. CONCLUSION

Because we have overruled appellant's issues and because we find no fundamental error from any aspect in the summary-judgment record, we affirm.


/s/     Randy Wilson
Justice


Panel consists of Justices Jewell, Spain, and Wilson.