HUNT CONSTRUCTION GROUP, INC., Desert Plains, Inc., Way Engineering, Ltd., and Way Engineering Service, Ltd., Appellants,

v.

Kevin KONECNY, Appellee.

No. 01–06–01155–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 4, 2008.

Rehearing Overruled July 9, 2009.

■■■■■■■■■■■■■■■■

R. Russell Hollenbeck, Thomas C. Wright, Wright Brown & Close, LLP, Houston, TX, for Appellants.

Sarah Ann Jordan, Handlin & Associates, Richard J. Plezia, Plezia, McLemore, Reddell, Ardoin & Strong, P.L.L.C., Houston, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns the exclusive remedy of coverage under the Texas Workers' Compensation Act (the "Act"). *See* Tex. Lab.Code §§ 401.001–451.003 (Vernon 2006 & Supp.2008). Appellants, Hunt Construction Group, Inc. ("Hunt"), Desert Plains, Inc. ("Desert Plains"), Way Engineering, Ltd., and Way Engineering Service, Ltd. (collectively "Way"), appeal from a judgment finding that they negligently contributed to the injuries of Kevin Konecny, appellee. In two issues, appellants assert that (1) the Act bars Konecny's claims because he recovered workers' compensation benefits for his injury and those benefits were the exclusive compensation he could receive, and (2) the evidence is legally insufficient to show that either Hunt or Way is liable for Konecny's injury. We conclude that Konecny's recovery of workers' compensation benefits bars any other recovery from appellants. We reverse the judgment of the trial court and render judgment in favor of appellants.

## Background

The Harris County Houston Sports Authority ("the Sports Authority") owned the property where the Houston Multipurpose Arena was constructed. The Arena is now called the Toyota Center. The Sports Authority hired Hunt as the general contractor for the project. Hunt subcontracted the ventilation and air conditioning work to Way, who subcontracted the sheet metal and duct work to Superior Air Handling Corporation ("Superior"). Konecny was a foreman for Superior. Hunt subcontracted the application of fireproofing material to Desert Plains.

The Sports Authority implemented an owner-controlled insurance program (OCIP) to provide workers' compensation, general and excess liability, and builders' risk insurance coverage for the entire Toyota Center project. At the Toyota Center project, the subcontractors were required to participate in the OCIP, with its requirements included in every subcontract. The costs for the OCIP were paid through a credit against each subcontractor's contract price.

According to the OCIP manual, the OCIP was "for the benefit of the Owner, Construction Manager, contractor and eligible subcontractors of all tiers who have on-site employees." The manual defined "eligible contractor" to include "all subcontractors providing direct labor on Houston Multipurpose Arena site.... Temporary labor services and leasing companies are to be treated as a subcontractor [sic]." The manual defined "ineligible contractor" to include "consultants, suppliers (that do not perform subcontract installation), vendors, materials dealers, guard services, or janitorial services, truckers ..., and other temporary project services." The list describing ineligible contractors was illustrative, not exclusive.

The OCIP coverage obtained by the Sports Authority applied to "Hunt, all employees of Hunt, all subcontractors of Hunt, and all subcontractors of subcontractors." The subcontract between Hunt and Way had a credit to pay for the workers' compensation coverage under the OCIP. Similarly, the subcontract between Way and Superior had a credit to pay for the workers' compensation coverage under the OCIP. The total contract price for Superior's work included an $81,000 deduction for "OCIP deduct." Way and Superior each subscribed to the workers' compensation insurance coverage provided to them through the Sports Authority's OCIP.

The OCIP was described in what was called "Attachment V," which was attached to the contract between Hunt and Way and the contract between Hunt and Desert Plains. The contract between Hunt and Desert Plains required Desert Plains to "purchase and maintain in force the insurance coverages set forth in Attachment V." The contract between Hunt and Way imposed the same requirement on Way. Attachment V stated,

## ATTACHMENT V

### INSURANCE REQUIREMENTS

*OWNER CONTROLLED INSURANCE PROGRAM*

Harris County–Houston Sports Authority hereinafter collectively called the Owner has elected to implement an Owner Controlled Insurance Program (OCIP) that will provide Workers' Compensation, Employer's Liability, General Liability, Excess Liability and Builder's Risk for the Construction Manager, contractors and subcontractors of every tier providing direct labor to The Houston Multipurpose Arena Project, hereinafter called The Project. The Owner agrees to pay all premiums associated with the OCIP including deductibles or self-insured retention subject to adjustment of the Contract Sum as provided in paragraph 11.1.7 below, unless otherwise stated in the contract documents.

. . . .

### APPLICABILITY OF THE OWNER CONTROLLED INSURANCE PROGRAM

Participation in the OCIP is mandatory but not automatic.

*Eligible Contractor* includes all subcontractors providing direct labor on the Project site. . . .

. . . .

Unless otherwise directed by The Owner, Contractors/subcontractors not enrolled in the OCIP shall be required to maintain their own insurance. Coverage types and limits are set forth in Article 11 of the General Conditions of the contractor. Contractor shall promptly furnish The Owner, or their designated representative, certificates of insurance giving evidence that all required insurance is in force.

. . . .

### CONTRACTOR'S RESPONSIBILITY FOR ITS SUBCONTRACTORS

The Contractor shall require that all subcontractors of every tier shall complete and submit Form 2, and shall also provide a copy of the declaration page(s) and premium rate page(s) for each policy, at least ten (10) days after notice to proceed is granted. TI shall be the Contractor's responsibility to submit to The Owner and its designated representative, changes to the cost of the subcontractor's insurance resulting from any adjustments to its program. Contractor shall include all of the provisions of this Article 11 in every subcontract so that such provisions will be binding upon each of its subcontractors.

....

CERTIFICATES AND POLICIES

Each Contractor and all tiers of subcontractors will receive a separate Workers' Compensation policy.

....

SUBCONTRACTOR PARTICIPATION

Upon execution of a subcontract, the Contractor will immediately report all new subcontractors to the OCIP Program Administrator for enrollment in the OCIP. The subcontractor shall incorporate all the provisions in any subcontractor agreement and shall cause its subcontractors to cooperate fully with the Owner, the OCIP Program Administrator and insurance companies for the Project, in the administration of the OCIP.... Contractor shall not permit any subcontractor to enter the Project Site prior to enrollment in the OCIP unless they are ineligible to participate in the OCIP and covered by their own insurance. Failure to do so shall negate the afforded coverage(s).

....

ADMINISTRATION OF THE OCIP

Administration is an integral part of the success of the OCIP. All Contractors *MUST* be properly enrolled in the OCIP before access to the Project site is allowed.

On May 23, 2003, crews from Superior and Desert Plains found themselves working on the same level of the Toyota Center project. The Superior crew, with Konecny as foreman, was installing perimeter air ducts while the Desert Plains crew was spraying fireproofing material on support beams. As the Desert Plains crew gradually got closer to the Superior crew, so did overspray from the slippery fireproofing material. For safety reasons, Konecny instructed his crew to clean up and leave the area. As he was leaving, Konecny slipped on fireproofing overspray, falling and injuring his back.

Konecny filed a workers' compensation claim and received benefits totaling $282,321.30. Konecny then initiated this suit. The jury found that comparative responsibility for Konecny's workplace injury belonged 20% to Konecny, 20% to Hunt, 20% to Way Engineering, and 40% to Desert Plains. After reducing the jury award by the amount of medical expenses paid through workers' compensation insurance in accordance with the prior agreement of the parties, the trial court awarded Konecny $181,342.96 in damages, excluding interest and court costs.

**Workers' Compensation Coverage**

In their first issue, appellants assert it was error for the trial court to deny their motion for directed verdict and judgment notwithstanding the verdict. Appellants contend that Konecny's suit is barred by the Texas Workers' Compensation Act because the Sports Authority and Hunt provided workers' compensation insurance to all contractors, subcontractors, and employees working on the Toyota Center project grounds.

**A. Standard of Review**

■ A motion for directed verdict or motion for judgment notwithstanding the verdict preserves a legal-sufficiency challenge. *See Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991). To preserve a complaint for review on appeal, a party must present to the trial court a timely request, motion, or objection that states the specific grounds for the ruling requested and conforms to the requirements of the Rules of Procedure and Evidence. *See Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999); Tex.R.App. P. 33.1(a)(1)(A)-(B). The complaining party must also

show that the trial court ruled on the request, objection, or motion "either expressly or implicitly." Tex.R.App. P. 33.1(a)(2)(A).

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). Legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.* Although the reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it, if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *Id.*

## B. Texas Workers' Compensation Act

■ A Texas employer has the option of participating in the workers' compensation system. Tex. Lab.Code Ann. § 406.002 (Vernon 2006). If the employer chooses not to participate, the employer may not assert common-law defenses against an employee in a negligence suit. *Id.* § 406.033. If the employer does participate, the employer and the employer's employees are protected from an employee's common-law claims for injuries or death occurring during the course and scope of the employee's work responsibilities, except those claims involving the death of an employee caused by an employer's intentional or grossly negligent conduct. *Id.*

§ 408.001. "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage ... for the death of or a work-related injury sustained by the employee." *Id.* § 408.001(a). Employees may have more than one employer within the meaning of the Act, and each employer may raise the exclusive remedy provision as a bar to the employee's claims. *See Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143 (Tex.2003); *Etie v. Walsh & Albert Co., Ltd.*, 135 S.W.3d 764, 768 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

For purposes of the Act, a general contractor is deemed the employer of a subcontractor and the subcontractor's employees if the general contractor provides, in accordance with a written agreement, workers' compensation insurance coverage to the subcontractor and its employees. Tex. Lab.Code Ann. § 406.123(e) (Vernon 2006). A general contractor is "a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors." *Id.* § 406.121(1). A subcontractor is a person who "contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform." *Id.* § 406.121(5). Since a general contractor is deemed the employer of a subcontractor's employees when the general contractor provides workers' compensation insurance to them, *id.* § 406.123(e), the subcontractor's employees who do not opt out of the workers' compensation coverage waive their right to sue the general contractor for claims not covered by the Act. *See id.* § 408.001(a).

## C. The Evidence

Konecny asserts that appellants presented no evidence at trial to show that they are entitled to the protections of the Act.

Specifically, Konecny claims that sections referring to workers' compensation in the contracts between the Sports Authority and Hunt, Hunt and Way, Hunt and Desert Plains, and Way and Superior are not in evidence. However, Sue Millican, comptroller of the Sports Authority, did testify to the agreement between the Sports Authority and Hunt. Millican stated that the Sports Authority obtained and paid premiums for the OCIP, which provided workers' compensation coverage to "Hunt, all employees of Hunt, all subcontractors of Hunt, and all subcontractors." She also testified that "Hunt was responsible for implementing the policy."

Konecny is correct that the contract sections relating to workers' compensation coverage were not presented as evidence for the jury. However, both parties agreed the issue of workers' compensation coverage as an exclusive remedy would not be presented to the jury because the matter of whether the Act barred the negligence suit was a legal issue for the court.

Although the contracts were not before the jury, the relevant sections of the contracts were presented to the court. Konecny attached unredacted copies of the contracts between Hunt and Way, Hunt and Desert Plains, and Way and Superior to its reply to appellants' motion for summary judgment. In his reply to appellants' motion for JNOV, Konecny relied on and referred to language in the contracts without questioning the authenticity of the documents or whether the contracts were in evidence for the court's consideration. In rendering its decision on appellants' motion for JNOV, "[w]e presume the trial court took judicial notice of its files." *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied); *see also Attorney Gen. of Tex. v. Duncan*, 929 S.W.2d 567, 571 (Tex.App.-Fort Worth 1996, no writ) ("[T]he trial court may take judicial notice of its file at any stage of proceedings and is presumed to have done so with or without a request from a party."). Because the contracts were presented as evidence for the trial court's consideration, and because we assume the trial court took judicial notice of its files, appellants did present evidence supporting their motion for JNOV.

### D. The Sports Authority

■ The parties do not dispute that Hunt was a general contractor for the Toyota Center project. The parties dispute only whether the Sports Authority was also a general contractor, in addition to being the owner of the project. However, we do not reach the merits of that dispute concerning whether the Sports Authority was a general contractor because that contention was never made to the trial court. On appeal, appellants contend that the Sports Authority was both the owner and a general contractor, citing *Entergy Gulf States, Inc. v. Summers*, in which the Texas Supreme Court held that "the Labor Code's definition of 'general contractor' does not prohibit a premises owner who 'undertakes to procure the performance of work or a service' from also being a general contractor." 50 Tex. Sup.Ct. J. 1140, 2007 WL 2458027, at *2, (Tex. Aug. 31, 2007). Konecny correctly responds that appellants did not present this argument to the trial court. In its motion for judgment notwithstanding the verdict, appellants stated that "Hunt Construction provided workers' compensation insurance to Plaintiff's employer—through the contracts and subcontracts with Way Engineering and Superior Air Handling—that covered Plaintiff at the time of this accident. Hunt Construction was therefore, for purposes of the Labor Code, Plaintiff's employer." Appellants never asserted at trial that the Sports Authority was a general contractor. We hold the argument

that the Sports Authority was a general contractor is waived on appeal because it was never made to the trial court. *See* Tex.R.App. P. 33.1(a)(1)(A)-(B).

### E. Hunt

Appellants contend that Hunt, acting as the general contractor, provided workers' compensation insurance to all subcontractors and employees on the site, so all subcontractors and employees became employees of Hunt for purposes of the Act. *See* Tex. Lab.Code Ann. § 406.123(e). Konecny replies that Hunt did not provide coverage because the Sports Authority, not Hunt, obtained the policy and paid the premiums. In asserting that the Sports Authority, not Hunt, provided workers' compensation insurance for the Toyota Center project site, Konecny argues that we should interpret "provide" to mean "purchase." The parties dispute, therefore, is over the meaning of the term "provides," as that term is used in the Act.

"Our primary objective" in construing statutes "is to determine the Legislature's intent." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006). If the statute's language is not ambiguous, we must seek the Legislature's intent in the plain meaning of the words and terms used and not look to extraneous matters for an intent the statute does not state. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). Generally, we accept the ordinary meaning of words used unless the Legislature provides a specific statutory definition. *Cities of Austin, Dallas, Fort Worth & Hereford v. Sw. Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex.2002). We read every word in a statute as if it were deliberately chosen and presume that omitted words were excluded purposely. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). We begin with the plain language of section 406.123(a) before resorting to the rules of construction because we assume the Legislature said what it meant. *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 286 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd). Only if we find that the Act's plain language is susceptible of two or more reasonable interpretations will we hold that section 406.123(a) is ambiguous. *See id.*

The relevant section states, "A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." Tex. Lab.Code Ann. § 406.123(a). Considering each section and word in connection with chapter 406, we conclude that the statute is unambiguous on its face. Therefore, we must construe the statute in light of its plain meaning. The ordinary meaning of the word "provide" is "to supply or make available." *See* Webster's Ninth New Collegiate Dictionary 948 (1990); *see Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666, 671 (Tex.App.-San Antonio 2008, no pet. h.).

Because we must give effect to every word in the statute, we conclude that the Legislature used the word "provides" intentionally. Had the Legislature intended for "provide" to mean "purchase," it could simply have used the word "purchase" instead. Alternatively, the Legislature could have defined "provide" to mean "purchase" in the statute's definition section. The Legislature chose neither of these options. We presume that the Legislature deliberately chose "provide" instead of "purchase" in writing the Act, choosing not to limit the deemed-employee relationship of section 406.123 to only those general contractors who purchase workers' compensation insurance. *See Funes*, 270 S.W.3d at 671 ("To hold to the contrary ... the general contractor would be required to procure a second compensation insurance

program in order to qualify under the statute as an 'employer' who 'provides' insurance, and thereby obtain the Act's protection.... The resulting 'double cover' for, in effect, single protection is superfluous, and outside any reasonable intent of the Legislature."); *see also Williams v. Razor Enters., Inc.,* 70 S.W.3d 274, 277 n. 6 (Tex.App.-San Antonio 2002, no pet.) ("Courts have consistently enforced provisions permitting an employer to benefit from workers' compensation coverage even though the coverage was paid for by a third entity."); *Williams v. Brown & Root, Inc.,* 947 S.W.2d 673, 678 (Tex.App.-Texarkana 1997, no pet.) ("[T]he statute does not require the general contractor to 'pay' for the insurance. It is incumbent upon the general contractor only to 'provide' the insurance.").

Konecny cites *Rice* in asserting that the contracts in this case merely required subcontractors to purchase workers' compensation coverage but did not provide that coverage. *See Rice v. HCBeck, Ltd.,* 284 S.W.3d 380, 384 (Tex.App.-Fort Worth 2006, pet. granted) (mem.op.). In *Rice,* an owner created an OCIP, an employee was injured on the site, and after recovering workers' compensation benefits under the OCIP, the employee sued the general contractor for negligence. *Id.* at 284 S.W.3d at 381–82. The contract between the owner and the general contractor in *Rice* only required subcontractors to apply for enrollment in the OCIP. *See id. at* 284 S.W.3d at 384.

The *Rice* decision is distinguishable because the insurance coverage here was provided by Hunt through the OCIP. *See id.* Here, the contract language makes clear that eligible subcontractors are automatically covered by the OCIP. Since all appellants were eligible subcontractors, they were automatically provided with workers' compensation coverage through the OCIP. Unlike in *Rice,* the general contractor did not merely require participation in the OCIP but provided insurance coverage through the OCIP. *See id.*

"[W]e construe subsection 406.123(a) to mean the following: where a general contractor and a subcontractor enter into a written agreement under which the general contractor *supplies or makes available* workers' compensation insurance coverage to the subcontractor and its employees, the general contractor is the employer of the subcontractor and its employees for purposes of the Workers' Compensation Act, as provided under subsection 406.123(e)." *Funes,* 270 S.W.3d at 671. Because Hunt supplied or made available workers' compensation insurance to Desert Plains, Way, Superior, and all of their employees, Hunt did "provide" workers' compensation insurance. Hunt is therefore considered the employer of Desert Plains, Way, Superior, and their employees for purposes of the Act.

## F. The Subcontractors

Having determined the general contractor, Hunt, provided the OCIP workers' compensation coverage, we must next determine how that coverage affected the subcontractor. When a general contractor provides workers' compensation insurance that covers all workers on a site, the subcontractors are "deemed employees" and immune from suit by injured workers. *Etie,* 135 S.W.3d at 768. In *Etie v. Walsh & Albert Co., Ltd.,* Clark Construction Group, Inc. entered into a contract with Enron Corp. for the construction of Enron building 2. Clark subcontracted part of the work to Way Engineering Company, Inc., who subcontracted part of its work to Walsh & Albert, Ltd. Clark purchased a workers' compensation policy covering all subcontractors and employees working on the Enron building 2 site. Etie, an employee of Way, was in-

jured on the site by the negligence of a Walsh & Albert employee. Etie sought and recovered workers' compensation benefits then sued Walsh & Albert for negligence. Walsh & Albert moved for, and the trial court granted, summary judgment. On appeal, we affirmed the trial court's decision, holding that Walsh & Albert was immune from suit as a "deemed employee." We explained:

> Clark Construction provided workers' compensation coverage to all of the employees who worked at the site as part of its contract with Way Engineering. Way Engineering's contract with Walsh & Albert incorporated by reference all of the provisions of the contract between Clark Construction and Way Engineering. Consequently, Walsh & Albert and its employees were also covered by the workers' compensation insurance policy that Clark Construction purchased. Therefore, as a general contractor who provided workers' compensation coverage, Way Engineering became Walsh & Albert's "employer" for purposes of the workers' compensation statute. Walsh & Albert, and its employees, became Way Engineering's "employees."

*Id.* at 767 (internal citations omitted).

■ As we stated in *Etie*, the purposes of the Act are best served by deeming immune from suit all subcontractors and lower-tier subcontractors who are collectively covered by workers' compensation insurance. *Id.* at 768. The Texas legislature's purpose in passing the Act was to ensure injured workers could obtain reimbursement for medical expenses related to workplace injuries without the time, money, and difficulty of a negligence lawsuit. *See Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555 (Tex.2001) (Baker, J., dissenting). Another purpose of the Act is to encourage employers to participate in workers' compensation by precluding non-

subscribing employers from relying on common-law defenses to negligence in defending against their employees' personal-injury actions. *Kroger Co. v. Keng*, 23 S.W.3d 347, 350 (Tex.2000).

Under the terms of the OCIP, coverage applied to contractors as well as subcontractors who provided direct labor, as each of appellants did here. Although the OCIP deemed some contractors to be ineligible for coverage under the OCIP, none of those categories applied to appellants.

We conclude that appellants are deemed employees for purposes of the Act. *See* TEX. LAB.CODE ANN. § 406.123(e). We hold that Konecny's sole remedy was workers' compensation coverage. We sustain the first issue in the appeal and do not reach the second issue.

### Conclusion

We reverse the judgment of the trial court and render judgment in favor of appellants.