

# NUMBER 13-19-00211-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GUADALUPE MARISCAL,                                      **Appellant,**

**v.**

MCCARTHY BUILDING COMPANIES, INC.
AND THE BRANDT COMPANIES, LLC,                          **Appellees.**

**On appeal from the 148th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Justice Tijerina**

Appellant Guadalupe Mariscal appeals the trial court's grant of summary judgment

in favor of appellees, McCarthy Building Companies, Inc. (McCarthy) and The Brandt

Companies, LLC (Brandt). By six issues, Mariscal contends that (1) there is a conflict

among the trial court's rulings, (2) appellees' summary judgment evidence is inadmissible,

(3) "Evidence establishes that Appellees and Appellant's employer were 'Independent Contractors,'" (4) McCarthy is not entitled to the Texas Workers' Compensation Act's (the TWCA) exclusive remedy defense, TEX. LAB. CODE ANN. § 408.001(a), (5) "Appellees fall outside of [the Texas Labor Code] § 408.001," and (6) the "[s]ubrogation [l]ien establishes [the] validity of Appellant's third-party claims against Appellees." We affirm.

## I. BACKGROUND

McCarthy entered into a contract with Christus Health, the owner of Spohn Hospital—Shoreline in Corpus Christi, Texas, to work on a construction project. McCarthy subcontracted with Murray Drywall & Insulation of Texas, Inc. (Murray) and Brandt to work on the project. Murray subcontracted with Emerald Coast Cleaners (Emerald) to work on the project. On July 10, 2017, Mariscal, an Emerald employee, was injured while working on the project after he stepped in a hole that was covered with plywood. It is undisputed that Mariscal received workers' compensation benefits due to his work-related injury.

On February 8, 2018, Mariscal sued McCarthy and Brandt for negligence, gross negligence, and negligence per se. According to Mariscal's pleadings, Brandt employees made the hole while they were installing a drain, and they then covered the hole with a sheet of plywood. Mariscal stated that when he stepped on the plywood, he fell into the hole because the plywood was ineffective and caved when he stepped on it.

On June 28, 2019, appellees filed a traditional motion for summary judgment claiming that Mariscal could not file suit against them because (1) he had received workers' compensation benefits and (2) appellees and Emerald were subscribers pursuant to an Owner Controlled Insurance Program (OCIP). *See id.* § 408.001 (providing

that workers' compensation is the exclusive remedy when the employer is a subscriber). Appellees attached evidence showing that Christus Health purchased an OCIP from the insurance broker/administrator Alliant Insurance Services, Inc. (Alliant) and that Christus Health contractually prohibited contractors and subcontractors from working on the project unless they had enrolled in the OCIP. Appellees attached summary judgment evidence showing that McCarthy, Brandt, and Emerald had enrolled in the OCIP and were covered by the workers' compensation insurance policy purchased by Christus Health from Alliant. Appellees also provided summary judgment evidence showing that Mariscal received benefits from Alliant.

The record shows that on July 31, 2018, a visiting judge, the Honorable Jose Manuel Bañales, presided over a hearing on appellees' motion and took the matter under advisement. Subsequently, another presiding judge, the Honorable David Stith, denied appellees' motion. Appellees filed a petition for writ of mandamus in this Court "seeking to compel [Judge Bañales] to: (1) vacate its September 7, 2018 order denying their motion for summary judgment; (2) admit the affidavits attached to relators' motion for summary judgment into evidence; and (3) render summary judgment in favor of relators [(appellees here)]." *See In re McCarthy Bldg. Cos., Inc.*, No. 13-19-00065-CV, 2019 WL 961966, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 27, 2019, orig. proceeding) (mem. op.).

In our memorandum opinion addressing appellees' petition for writ of mandamus, we noted that Judge Bañales "informed us that, although he presided over the hearing for summary judgment at issue in this original proceeding, he did not sign the September 7, 2018 order subject to review, and that order was instead signed by the Honorable David

3

Stith, the Presiding Judge of the 319th District Court of Nueces County, Texas." *Id.* This Court concluded that the matter was not "properly before us" and denied the petition for writ of mandamus without prejudice so that the new judge of the 148th District Court, the Honorable Carlos Valdez, could hold further proceedings on the matter within his sound discretion. *Id.*

Appellees filed a motion for reconsideration of their motion for summary judgment asserting the TWCA's exclusive remedy defense and attaching and incorporating their originally filed traditional motion for summary judgment and summary judgment evidence. Mariscal filed a response objecting to appellees' evidence and arguing that: (1) "the facts do not support multi-tier protection/statutory 'exclusive remedy' bar against [his] claims"; (2) "all of the construction contracts submitted and relied upon by [appellees] include[] a clear and unambiguous clause that each and all, whether general contractor, subcontractor, or sub-subcontractor were 'independent contractors' while performing their assigned work, and therefore do not receive the multi-tier protection" of the OCIP; (3) "the facts of this case [are] outside the holding by the Texas Supreme Court in *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349 (Tex. 2009)"; and (4) he raised a question of fact.

The trial court granted appellees' motions. This appeal followed.

## II.    STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a

4

right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant seeking a traditional motion for summary judgment must either conclusively disprove at least one element of each of the plaintiff's causes of action or plead and conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007).

### III.    INCOMPATIBLE DECISIONS

By his first issue, Mariscal contends that reversal is warranted in this case due to the discrepancy between Judge Stith's and Judge Valdez's decisions. Specifically, as we understand it, Mariscal argues that a question of fact has been shown because prior to Judge Valdez granting summary judgment, Judge Stith denied appellees' motion for summary judgment. That is Mariscal argues that because reasonable minds differed in

5

their opinion in this case, a question of fact has been shown to exist. Mariscal cites no authority, and we find none, supporting a conclusion that a question of fact exists, thereby precluding summary judgment, solely because two judges reach a different conclusion regarding whether to grant or deny a motion for summary judgment. We decline Mariscal's invitation to make such a novel conclusion. Therefore, we overrule Mariscal's first issue.

## IV.    ADMISSION OF EVIDENCE

By his second issue, Mariscal contends that the trial court should have excluded all of appellees' summary judgment evidence. Specifically, Mariscal argues as follows:

a)    the Affidavits do not identify, or attach what "documents" were reviewed in preparation for each of the Affidavits; TEX. R. CIV. P. 166a(d); *McConathy v. McConathy*, 869 S.W.2d 341, 342 n.2 (Tex. 1994);

b)    the Affidavits do not address how each of the Affiants has "personal knowledge" of the "regular practice" of the entities to "make" and "receive" the Affidavit statements which refer to "condition," "opinion," and "diagnosis" which none of the attached documents contain or specify inasmuch as none of the Affiants have medical credentials to attest under oath to such medical "facts" (with the exception of the DWC-73 medical form signed by a medical doctor of whom the Affiant has no personal knowledge, all the Affidavits exhibits are insurance forms and schedules or contract documents), and therefore, all of Defendants' Affidavits are not "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies," and which none of the Affiants have been proven competent to testify about; TEX. R. CIV. P. 166a(c); *New York Times Inc. v. Isaacks*, 146 S.W. 3d 144, 164 (Tex. 2004); *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989);

c)    the Affiants do not state how each of them have "personal knowledge" of any of the documents attached to their Affidavits, particularly when the Affiants are in locations shown by the Notary Stamp on each Affidavit that are separate and distinct from the Project site; TEX. R. CIV. P. 166a(f); TEX. R. EVID. 602; *Kerlin v. Arias*,

6

274 S.W.3d, 666, 668 (Tex. 2008); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996);

d) the Appellees do not address how the attached "haystack" of policy documents and Certificates that are shown to be in effect during a timeframe outside the timeframe of the underlying incident in this cause—to-wit July 10, 2017—are relevant to the issues presented in their motion; TEX. R. EVID. 402; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995);

e) the Appellees do not address how the attached "haystack" of policy documents and Certificates that have different and distinct policy identifiers from the one under which the Plaintiff received his benefits, are relevant to the issues presented in their motion and meet the "ultimate responsibility for obtaining alternate workers' compensation in the event FMR [Owner] terminated the OCIP" test for the general contractor under TEX. LABOR CODE § 406.123; TEX. R. EVID. 402; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995); *HCBeck Ltd. v. Rice*, 52 S.W.3d 349, 352-352 (Tex. 2009); and

f) in particular, the second Affidavit by Ms. Barlow, attached to the Appellants'/Defendants' Reply on July 27, 2018 without the requisite leave of court under TEX. R. CIV. P. 166a(c), includes incomprehensible statements to include an explanation affirming that a Notice letter (attached to Plaintiff's Response as Exhibit 3), addressed to Plaintiff's counsel to assert a lien against Plaintiff's counsel for negligence in inasmuch as the "accident [incident at issue in this case], occurred under circumstances creating liability against you for injuries sustained by reason of your negligence," and further, the sworn statement that: Regarding my Exhibit 3 to Plaintiff's counsel, my statements regarding a lien refer to a lien against Plaintiff. In making that statement, I had no expectancy that such lien would be satisfied from a third-party other than Plaintiff. is a clear indication that the second Affidavit by Ms. Barlow is not "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies," inasmuch as it identifies the Plaintiff as a "third-party," and seeks to subrogate workers' compensation benefits directly from the Plaintiff, which are protected against such intended subrogation by the workers' compensation carrier, sworn statements by Affiant which are misstates of fact and law, and are therefore, defective. TEX. LABOR CODE § 408.201; TEX. CON. art. XVI, § 28; *Haynes v. Haynes*, 178 S.W.3d. 350, 355 (Tex. App.—Houston [14th Dist.] 2005, pet denied).

7

Rule 38.1(i) requires a party to make "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record" in its appellate brief. TEX. R. APP. P. 38.1(i). "To comply with Rule 38.1, appellants must provide such a discussion of the facts and the authorities relied upon to maintain the point at issue." *Lowry v. Tarbox*, 537 S.W.3d 599, 619 (Tex. App.—San Antonio 2017, pet. denied) (citing *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.* "When appellants fail to discuss the evidence supporting their claim or apply the law to the facts, they present nothing for review." *Id.* at 620 (citing *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895–96 (Tex. App.—Dallas 2010, no pet.)). An appellate issue is waived by failure to offer argument, provide appropriate record citations, or a substantive analysis. *Id.*

After setting out the above-stated list of alleged deficiencies in appellees' summary judgment evidence, Mariscal sets out the procedural history of his objections in the trial court and then reiterates that he provided the trial court with objections that required it to exclude appellees' evidence. However, other than the assertions listed above with the citations listed after each allegation, Mariscal has not presented any substantive legal argument applying the legal authorities cited to the facts of this case. *See* TEX. R. APP. P. 38.1(i). Mariscal merely recites the list of global and unsubstantiated allegations with general citation to authority, without explaining how that authority cited applies to the facts here. Thus, Mariscal has failed to provide any substantive analysis in such a manner as

8

to demonstrate that the trial court committed reversible error when it did not exclude appellees' summary judgment evidence. We are prohibited from making Mariscal's argument for him, and we refuse to do so. We have no duty to ascertain how the law as set out in the authority cited by Mariscal applies to the facts in this case, and we are prohibited from researching the law and then fashioning a legal argument for him when he has failed to do so. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 932 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Atkinson v. Sunchase IV Homeowners Ass'n, Inc.*, No. 13-17-00691-CV, 2020 WL 2079093, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2020, no pet.) (mem. op.). Therefore, we overrule Mariscal's second issue.

## V. TWCA

"The purpose of the [TWCA] is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured." *HCBeck, Ltd.*, 284 S.W.3d at 350. An employee benefits from workers' compensation insurance benefits "because it saves the time and litigation expense inherent in proving fault in a common law tort claim." *Id.* "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer or an . . . employee of the employer."[1] TEX. LAB. CODE ANN. § 408.001(a); *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 69 (Tex. 2016). Thus, if an employer subscribes to workers' compensation insurance benefits, and is then sued by a covered

---

[1] An exception, not applicable here, applies to those claims involving the death of an employee caused by an employer's intentional or grossly negligent conduct. TEX. LAB. CODE ANN. § 408.001.

employee, the employer may "assert the statutory exclusive remedy defense against the tort claims of its employees for job related injuries" and generally cannot be held liable in tort for those injuries *HCBeck, Ltd.*, 284 S.W.3d at 350. A general contractor may invoke the exclusive remedy defense provided to a subscribing employer "if, pursuant to a written agreement, it 'provides' workers' compensation insurance coverage to the subcontractor and its employees."[2] *Id.* (citing TEX. LAB. CODE ANN. §§ 406.123(a), 408.001(a)).

Owners, contractors, and subcontractors may agree to an OCIP, which "is designed to secure insurance, including workers' compensation insurance, at a reasonable price for all workers at a job site or construction site." *TIC Energy & Chem., Inc.*, 498 S.W.3d at 70 n.7 (citing *HCBeck, Ltd.*, 284 S.W.3d at 359–60 & n.6). OCIPs benefit the parties because they "allow the highest-tiered entity to ensure quality and uninterrupted coverage to the lowest-tiered employees." *Id.* OCIPs save costs, secure better coverage, and have better safety programs. *HCBeck, Ltd.*, 284 S.W.3d at 360 (citing and quoting *Am. Protection Ins. v. Acadia Ins.*, 814 A.2d 989, 991 n.1 (Me. 2003)). Subcontractor's employees who do not opt out of workers' compensation coverage waive their right to sue a general contractor for their injuries when a general contractor is deemed the employer of a subcontractor's employees and provides workers' compensation insurance to them. *Hunt Const. Grp., Inc. v. Konecny*, 290 S.W.3d 238, 243 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

In other words, the general contractor enrolled in workers' compensation insurance

---

[2] A general contractor is "a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors." *Id.* § 406.121(1). A subcontractor is a person who "contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform." *Id.* § 406.121(5).

is immune from claims brought by a subcontractor's employee and is entitled to the exclusive remedy defense. *See* TEX. LAB. CODE ANN. §§ 406.123 ("A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor. . . . An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state."), 408.001(a) (setting out the exclusive remedy defense). "A general workplace insurance plan that binds a general contractor to provide workers' compensation insurance for its subcontractors and its subcontractors' employees achieves the Legislature's objective to ensure that the subcontractors' employees receive the benefit of workers' compensation insurance." *TIC Energy & Chem., Inc.*, 498 S.W.3d at 69.

## A.    Failure to Prove Ultimate Responsibility

By his third issue, Mariscal argues that under *HCBeck* in order for McCarthy to establish that it provided workers' compensation insurance, it must have agreed that it was "ultimately responsible for obtaining workers' compensation insurance in the event [Christus Health] terminate[d] the OCIP." 284 S.W.3d at 351–52. Mariscal does not disagree that an agreement to provide workers' compensation insurance existed pursuant to the OCIP; instead, he argues that McCarthy cannot invoke the exclusive remedy defense because it did not agree to provide worker's compensation coverage in the event the OCIP was discontinued.

In *TIC Energy & Chemical, Inc.*, the Texas Supreme Court discussed its holding in

11

*HCBeck* as follows:

> In *HCBeck, Ltd. v. Rice*, we explained that a "general contractor who has, pursuant to a written agreement, purchased a workers' compensation insurance policy covering its subcontractors and its subcontractors' employees . . . becomes the statutory employer of its subcontractor's employees, and is thus entitled to the benefits conferred on employers by the Act." Furthermore, because a contractor can "'provide[ ]' workers' compensation, even when it has not purchased the insurance directly, . . . multiple tiers of subcontractors [thereby] qualify as statutory employers entitled to the exclusive-remedy defense." "Such a scheme," we observed, "seems consistent with the benefits offered by controlled insurance programs, which are designed to minimize the risk that the subcontractors' employees will be left uncovered." We further explained that a construction and application of section 406.123 that "favors blanket coverage to all workers on a site" accords with legislative intent and the "Legislature's 'decided bias' for coverage."

498 S.W.3d at 74.

In its analysis of the appellant's argument that the general contractor did not provide coverage to its subcontractors and their employees, the *HCBeck* Court pointed out that the general contractor provided insurance because it agreed to do so, and the contract stated that the general contractor would pay for the insurance if there were a lapse in the OCIP. *See HCBeck, Ltd.*, 284 S.W.3d at 360. The *HCBeck* Court emphasized that its primary concern was whether the general contractor did more than just require the lower tiered contractors to obtain workers' compensation insurance and not whether one could imagine a scenario where the general contractor might fail to do so. *Id.* at 355–56; *see also Cook v. White Const. Co.*, No. 03-10-00114-CV, 2011 WL 3371542, at *4 (Tex. App.—Austin Aug. 4, 2011, no pet.) (mem. op.). Thus, the *HCBeck* Court's analysis of whether the general contractor provided workers' compensation insurance to its subcontractors focused on whether a contingency plan was in place that prevented the

12

subcontractors from going without workers' compensation insurance if a lapse in the OCIP occurred. *See* 284 S.W.3d at 360. Only under that scenario could the general contractor claim that it "provided" the coverage pursuant to the TWCA and as the court defined the term "provide." *Id.* In other words, to be entitled to the exclusive remedy defense, the general contractor must ensure that if a lapse in the OCIP occurs, the subcontractors are not able to opt out of coverage. *See id.*

We find the reasoning in *Cook v. White Construction Co.* persuasive. *See* 2011 WL 3371542, at *4. In that case, the court did not interpret *HCBeck* as standing for the proposition that a general contractor only "provides" workers' compensation insurance if it promises to pay for replacement coverage in the event of a lapse in the OCIP. *Id.* Instead, the *Cook* court explained that the general contractor must ensure that the employees are covered by workers' compensation insurance throughout the project, and it implied that the general contractor promising to pay for the replacement coverage if the owner discontinues the OCIP is not the only way to make that showing. *Id.*

In *Cook*, the appellant argued that in *HCBeck*, the owner's "OCIP said [the general contractor] 'shall' obtain insurance for [appellant] if the OCIP lapsed, whereas" the OCIP in *Cook* said that the general contractor and subcontractors would be "expected to" provide insurance if the OCIP lapsed. *See id.* The appellant claimed using the term "will be expected to" was "precatory at best," but it was not mandatory like the "shall" which was used in the OCIP in *HCBeck. Id.* The *Cook* court stated that in *HCBeck* the Texas Supreme Court "emphasized that its primary concern was whether [the general contractor] actually provided workers' compensation insurance, not whether one could

13

imagine a scenario where it might fail to." *Id.* The *Cook* court rejected the appellant's argument and determined the contract had indeed required the general contractor to provide workers' compensation insurance if the OCIP lapsed. *Id.*

In *Powell*, this Court also interpreted *HCBeck. Powell v. Valero Energy Corp.*, No. 13-18-00209-CV, 2019 WL 961958, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2019, pet. denied) (mem. op.). In *Powell*, VRT, the owner of the premises, hired Qualspec to work on a project, and it required Qualspec to enroll in an OCIP. *Id.* The appellant, Qualspec's employee, was injured while working on the project, and he sued VRT for negligence. *Id.* The appellant maintained "that, because VRT could have required Qualspec to procure its own [workers' compensation] coverage, VRT did not agree to 'provide' coverage." *Id.*

We looked at the common meaning of the word "provide" to determine "whether VRT provided coverage by written agreement." *Id.* (citing *Halferty v. Flextronics Am., LLC*, 545 S.W.3d 708, 713 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied)). We said that under the labor code "provide" means "to supply or make available." *Id.* We noted that "a general contractor does not provide coverage simply by requiring its subcontractors to secure their own coverage." *Id.* (citing *Flextronics*, 545 S.W.3d at 714). "Rather, the general contractor must do something more than pass the onus of obtaining coverage to the subcontractor" and "must assure coverage by putting 'something in the pot.'" *Id.* We concluded that because "VRT required Qualspec to participate in its ROCIP on qualifying projects, and with respect to [the appellant], it provided workers' compensation coverage through the ROCIP," it had "done more than simply pass the

14

onus of obtaining coverage to a subcontractor." *Id.*

The appellant argued "that the Agreement allow[ed] VRT to choose if it provides coverage through the ROCIP, but the Agreement impose[d] no obligation for VRT to provide coverage." *Id.* at *4. We acknowledged that the Agreement provided that coverage was not available for certain other services, but we concluded that "it is of no consequence that coverage might not have been made available for other services and 'we look at what did happen, not what might happen.'" *Id.* (citing *HCBeck*, 284 S.W.3d at 359 n.4). We then pointed out that "VRT determined that Qualspec's inspection services at the Refinery was qualifying 'Work,' and it required Qualspec to enroll in its ROCIP"; therefore, we concluded that the appellant "received compensation under the applicable policy for his injuries." *Id.* We stated that "[e]xtending the exclusive remedy defense to VRT under such circumstances is consistent with the TWCA's 'decided bias' for coverage." *Id.*

Here, the summary-judgment record establishes that McCarthy, Brandt, Emerald, and all subcontractors were required to enroll in workers' compensation insurance provided by the OCIP and that each of the entities complied by enrolling with the OCIP insurance provider, Alliant. *See Funes v. Eldridge Elec. Co.*, 270 S.W.3d 666, 671–73 (Tex. App.—San Antonio 2008, no pet.) (concluding in the context of an OCIP that a general contractor that complies with the terms of the OCIP has provided workers' compensation to its employees). In its contracts with its subcontractors, McCarthy required all the subcontractors to enroll in the OCIP, and it is undisputed that they did so. It is undisputed that the subcontractors, including Brandt and Emerald, had workers'

15

compensation insurance pursuant to the OCIP and at no time went without it. It is undisputed that the OCIP never lapsed, and as a result, Mariscal received his benefits from Alliant.

The contract between McCarthy and Brandt states, "All insurance requirements shall flow down to subcontractors and suppliers of any tier and any flow down of these requirements to such subcontractors and suppliers of any tier does not relieve Subcontractor of its obligation to provide the insurance outlined herein." The contract between Brandt and Emerald incorporated the McCarthy/Brandt contract. The summary judgment evidence establishes that none of the subcontractors would have been allowed to work on the project without enrolling in the OCIP. The OCIP specifically stated, "Access to the project site will not be permitted until the enrollment [in the OCIP] is complete."

Finally, Mariscal acknowledges that had the OCIP lapsed, the contract stated that "[t]he cost of the replacement coverage shall be at Owner's expense." Therefore, although the contract may not have specifically stated that McCarthy would be responsible for paying for the replacement insurance policies, the contract required Christus Health to do so, and therefore, McCarthy, Brandt, Emerald, and their employees were not at risk of losing coverage even if the OCIP lapsed. *HCBeck, Ltd.*, 284 S.W.3d at 350; *see also Powell*, 2019 WL 961958, at *3.

An owner who procures the services of a contractor is considered a general contractor for purposes of the TWCA and is entitled to the exclusive remedy defense. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438 (Tex. 2009) (op. on reh'g) ("[A] general contractor is a person who takes on the task of obtaining the performance

16

of work. That definition does not exclude premises owners . . . ."). Here, it is undisputed that Christus Health and McCarthy signed a contract for McCarthy to perform work on the project. This evidence supports a conclusion that Christus Health is McCarthy's employer for purposes of the TWCA. *See id.*; *see also Lazo v. Exxon Mobil Corp.*, No. 14-06-00644-CV, 2009 WL 1311801, at *2 (Tex. App.—Houston [1st Dist.] May 7, 2009, no pet.) (mem. op.) (deeming a premises owner a statutory employer where the agreement stated that premises owner could provide OCIP coverage and it did so). Christus Health's promise to purchase replacement insurance if a lapse in the OCIP occurred "indicates that the higher-tier contractor ha[d] the ultimate obligation to ensure that the employees of the lower-tier subcontractors [were] covered." *See HCBeck, Ltd.*, 284 S.W.3d at 353. The evidence thus establishes that a contract existed that provided workers' compensation insurance even if the OCIP lapsed, and under pertinent authority, so long as an upper tier contractor does this, all lower tier contractors are covered. *TIC Energy & Chem., Inc.*, 498 S.W.3d at 74.

Nonetheless, Mariscal argues that Christus Health's promise to pay for replacement insurance if a lapse in the OCIP occurred proves that McCarthy did not have "ultimate responsibility" for workers' compensation coverage on the project. However, in *HCBeck*, the Texas Supreme Court explained that § 406.123(a)'s exclusive remedy defense "does not require a general contractor to actually obtain the insurance, or even pay for it directly." 284 S.W.3d at 353. The *HCBeck* Court held that although the general contractor in that case was not required to pay for the coverage that was provided to the subcontractor by the owner under the OCIP, the general contractor still "provided" the

17

coverage to the subcontractors. *Id.* We conclude that the same reasoning applies here. Thus, although McCarthy was not required to pay for the replacement coverage had a lapse in the OCIP occurred, Christus Health would have supplied it, and Emerald would have been covered if a lapse in the OCIP occurred. This reasoning aligns with *TIC Energy & Chem., Inc.*, which states that a contractor "'provide[s]' workers' compensation, even when it has not purchased the insurance directly . . . multiple tiers of subcontractors [thereby] qualify as statutory employers entitled to the exclusive-remedy defense." 498 S.W.3d at 74.

To hold to the contrary that McCarthy did not provide the insurance, would produce an unjust and unreasonable result. *See Funes*, 270 S.W.3d at 671. Here, Christus Health, the premises owner, has implemented an OCIP and contractually required its general contractor, McCarthy, to contractually require all subcontractors to enroll in the OCIP, and Christus Health agreed to purchase replacement coverage if a lapse in the OCIP occurred. To conclude that McCarthy did not "provide" the insurance would preclude protection of the general contractor, whom the Legislature clearly intended to protect under subsections 406.123(a) and (e). *See id.* at 672.

> In that hypothetical, the general contractor would be required to procure a second compensation insurance program in order to qualify under the statute as an "employer" who "provides" insurance, and thereby obtain [TWCA's] protection. This, however, makes little sense because of its redundancy—the premises owner has already established a program in which all, including the general contractor, are required to enroll, and under which all, including the general contractor, are intended to be protected. The resulting "double coverage" for, in effect, single protection is superfluous, and outside any reasonable intent of the Legislature.

*Id.*

18

Accordingly, under the applicable authority, we conclude that McCarthy did more than merely require that Emerald enroll in workers' compensation insurance and therefore met the definition of "provide" as used in the TWCA. *See HCBeck*, 284 S.W.3d at 359 n.4 (explaining that the fact that the premises owner "was not contractually bound to continue the OCIP" did not preclude statutory employer status for general contractor because the general contractor promised to provide it); *Etie v. Walsh & Albert Co., Ltd.*, 135 S.W.3d 764, 765 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that a general contractor was a statutory employer where it exercised its option to provide workers' compensation coverage); *see also Cook*, 2011 WL 3371542, at *4 (concluding that the general contractor was a statutory employer where the premises owner could have discontinued the OCIP coverage but did not). Therefore, the evidence establishes as a matter of law that McCarthy is deemed Brandt's employer for purposes of the TWCA. *See* TEX. LAB. CODE ANN. § 406.123(e). Mariscal does not challenge the trial court's conclusion that Brandt is Emerald's deemed employer for purposes of the exclusive remedy defense. *See TIC Energy & Chem., Inc.*, 498 S.W.3d at 70. Accordingly, appellees met their burden to show that they were entitled to invoke the exclusive remedy defense, and the burden shifted to Mariscal to show that a question of fact existed to defeat summary judgment. We overrule Mariscal's third issue.

## D.    Independent Contractor

Mariscal by his fourth and fifth issues contends that Emerald, McCarthy, and Brandt were independent contractors and were therefore not entitled to assert TWCA's exclusive remedy defense. Appellees cite § 406.123's exception to § 406.122(b)'s

19

general rule that subcontractors are generally independent contractors, arguing that under the exception, McCarthy was the deemed employer of its subcontractors and their employees and Brandt was the deemed employer of Emerald and its employees. Therefore, according to appellees, § 406.122(b) does not apply here.

"[T]he purposes of the [TWCA] are best served by deeming immune from suit all subcontractors and lower-tier subcontractors who are collectively covered by workers' compensation insurance." *Hunt Const. Grp., Inc.*, 290 S.W.3d at 247. One of the Legislature's "purposes in passing the [TWCA] was to ensure injured workers could obtain reimbursement for medical expenses related to workplace injuries without the time, money, and difficulty of a negligence lawsuit." *Id.* (citing *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555 (Tex. 2001) (Baker, J., dissenting)). In addition, the TWCA encourages "employers to participate in workers' compensation by precluding nonsubscribing employers from relying on common-law defenses to negligence in defending against their employees' personal-injury actions." *Id.* (citing *Kroger Co. v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000)).

In *TIC Energy*, the Texas Supreme Court held that § 406.122(b) is the general rule and that § 406.123 sets out a permissive exception. 498 S.W.3d at 71. Section 406.122(b) states,

> A subcontractor and the subcontractor's employees are not employees of the general contractor for purposes of this subtitle if the subcontractor: (1) is operating as an independent contractor; and (2) has entered into a written agreement with the general contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work.

TEX. LAB. CODE ANN. § 406.122(b). Section 406.123, entitled "Election to Provide

Coverage; Administrative Violation," states that "[a] general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *Id.* § 406.123(a). Section 406.123 also states, "An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state." *Id.* § 406.123(e). Moreover, employees may have more than one employer within the meaning of the TWCA, and each employer may raise the exclusive remedy provision as a bar to the employee's claims. *See Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 143 (Tex. 2003); *Etie*, 135 S.W.3d at 768.

In general, under § 406.122(b), subcontractors and their employees are independent contractors, so long as the parties agree that workers' compensation insurance will be provided pursuant to an OCIP; however, under § 406.123, all tiers of the contractors are not considered independent contractors for purposes of the TWCA. *See* TEX. LAB. CODE ANN. § 406.122(b), 123; *HCBeck, Ltd.*, 284 S.W.3d at 353 (explaining that because the general contractor provided workers' compensation to the subcontractors pursuant to an OCIP, the general contractor was entitled to the exclusive remedy defense as an employer). In that case, the general contractor is deemed the employer of the subcontractor and the subcontractor's employees for purposes of the workers' compensation laws of this state. *See* TEX. LAB. CODE ANN. § 406.123(e); *HCBeck, Ltd.*, 284 S.W.3d at 353 (recognizing general contractor's status as employer of subcontractors when general contractor pursuant to an OCIP agreed to provide workers' compensation

insurance to the subcontractors).

Here, we have already concluded that workers' compensation insurance had been provided upstream and downstream. Therefore, we find "no reason why this shift in status from 'independent contractor' to 'deemed employee,'" with its concomitant protections, should be denied to any tiers. *See Etie*, 135 S.W.3d at 767; *see also Powell*, 2019 WL 961958, at *3 ("The TWCA's 'deemed employer/employee relationship extends throughout all tiers of subcontractors.'"). A subcontractor retains its status as an independent contractor by choosing not to participate in workers' compensation coverage. *Etie*, 135 S.W.3d at 768. However, here, McCarthy, Brandt, and Emerald all chose to participate and were in fact required to participate in the OCIP providing workers' compensation insurance. Therefore, we conclude that the TWCA's deemed employer/employee relationship extended throughout all tiers of the subcontractors under § 406.123 and that McCarthy, Brandt, and Emerald were not independent contractors for purposes of the TWCA. *See* TEX. LAB. CODE ANN. § 406.123; *TIC Energy*, 498 S.W.3d at 70; *Etie*, 135 S.W.3d at 768; *see also Powell*, 2019 WL 961958, at *3. We overrule Mariscal's fourth and fifth issues.[3]

## VI.    SUBROGATION

By his sixth issue, Mariscal contends that a subrogation lien establishes his third-party claims. Specifically, Mariscal complains of a letter from appellees' attorney he alleges contains "statements [that] are a complete misrepresentation of the law made to

---

[3] Mariscal recognizes that the exception applies when a general contractor has provided workers' compensation insurance. However, he disagrees with our conclusion that McCarthy did so.

the Court, under oath" and that the submission of those "statements, made under oath, is sanctionable." Mariscal then repeats his claims, without substantive legal analysis, that appellees failed in their summary judgment burden pursuant to the caselaw. However, Mariscal does not state or explain how the letter would entitle him to reversal of the trial court's summary judgment. Accordingly, we conclude that this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). We overrule Mariscal's sixth issue.

## VII.    CONCLUSION

We affirm the trial court's judgment.


JAIME TIJERINA
Justice

Delivered and filed on the
25th day of March, 2021.

23